Lewis W. Siegel
60 East 42nd Street - Suite 4600
New York, NY 10165
(212) 286-0010

Proposed Attorney for
Future Present Productions, LLC,  Debtor and
Debtor in Possession

**Hearing Date & Time -**
_____

**Objection Deadline**
_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                                                  **Subchapter V**
                                                                               **Chapter 11 Case**
**Future Present Productions, LLC**                      **No. 23-42510 (JMM)**
**DBA GUM Studios**
                                   **Debtor.**
-------------------------------------------------------------x

**Notice of Hearing Debtor's Motion for Interim Order**
**under 11 U.S.C. §§ 105, 361 and 363 and**
**Fed. R. Bankr. P. 4001 Authorizing Debtor to**
**Use Cash Collateral of and Granting Adequate Protection to the Lenders**
**and Scheduling a Final Hearing under Bankruptcy Rule 4001(b)**

**PLEASE TAKE NOTICE** that a hearing before the Honorable Jil Mazer-Marino,

United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New

York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800 shall be held on

_____ , 2023 at _____ on the motion (the "Motion") filed by Lewis W. Siegel on

behalf of Future Present Productions, LLC, debtor and debtor in possession ("Debtor") seeking

the entry of an interim order pursuant to sections 105, 361 and 363 of Title 11 of the United

States Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure and E.D.N.Y. LBR

4001-5: (i) authorizing Debtor to use the cash collateral (the "Cash Collateral") of the Small

Business Administration (the "SBA"), Grow America Fund, Inc. ("Grow America"), and Pursuit

1

Lending ("Pursuit") each of which was a pre-petition secured lender to Debtor; and (ii) scheduling a hearing to consider the entry of a final order authorizing Debtor's use of the Cash Collateral.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be in writing and filed with the Bankruptcy Court by _____ (the "Objection Deadline") through the Court's electronic filing system. Instructions for electronically filing an objection can be found at www.nyeb.uscourts.gov. A copy of the objection must also be sent, so as to be received by the Objection Deadline, to: Lewis W. Siegel at 60 East 42nd Street - Suite 4600, New York, NY 10165 and 50 Battery Park Drive, Bridgeport, CT 06605; to the Subchapter V Trustee, Gerard R. Luckman, Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, NY 11553; and Office of the US Trustee, Attn: Nazar Khordorovsky, One Bowling Green, Room 510, New York, NY, 10004.

      **PLEASE TAKE FURTHER NOTICE** that the hearing shall not be held in person but shall be held telephonically or by video. Those intending to appear at the hearing must register with eCourt Appearances no later than two days prior to the hearing. The phone number or video link for the hearing will be emailed to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Mazer-Marino's courtroom deputy for instructions at (347) 394-1844, JMM_Hearings@nyeb.uscourts.gov.

      **PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be

adjourned without notice other than an announcement in open Court.

Dated: New York, New York
July 27, 2023

                                        Lewis W. Siegel
                                        Proposed Attorney for
                                        Future Present Productions, LLC

                                        /s/ Lewis W. Siegel

                                        _____

                                        60 East 42nd Street - Suite 4600
                                        New York, NY 10165
                                        (212) 286-0010

Lewis W. Siegel
60 East 42nd Street - Suite 4600
New York, NY 10165
(212) 286-0010

Proposed Attorney for
Future Present Productions, LLC,  Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                                     **Subchapter V**
                                                              **Chapter 11 Case**
**Future Present Productions, LLC**                           **No. 23-42510 (JMM)**
**DBA GUM Studios**
                        **Debtor.**
-------------------------------------------------------------x

**Debtor's Motion for Interim Order**
**under 11 U.S.C. §§ 105, 361 and 363 and**
**Fed. R. Bankr. P. 4001 Authorizing Debtor to**
**Use Cash Collateral and Granting Adequate Protection to the Lenders**
**and Scheduling a Final Hearing under Bankruptcy Rule 4001(b)**

**TO: THE HONORABLE JIL MAZER-MARINO,**
**UNITED STATES BANKRUPTCY JUDGE:**

Future Present Productions, LLC, the debtor and debtor in possession ("Debtor"), by its

proposed attorney, Lewis W. Siegel, submits this motion (the "Motion") seeking the entry of an

interim order (the "Interim Order"), pursuant to sections 105, 361 and 363 of Title 11 of the

United States Code, (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "Rules") and E.D.N.Y. LBR 4001-5: (i) authorizing Debtor to use the Cash

Collateral (as defined in Bankruptcy Code §363(a)) of the Small Business Administration (the

"SBA"), Grow America Fund, Inc. ("Grow America"), and Pursuit Lending ("Pursuit"), each of

which is a pre-petition secured lender; and (ii) scheduling a final hearing (the "Final Hearing") to

1

consider the entry of a final order (the "Final Order") authorizing Debtor's use of the Cash Collateral. In support of this Motion, Debtor submits the affirmation of Carrie White ("White"), the CEO of Debtor. In further support of this Motion, Debtor respectfully states as follows:

### Summary of Cash Collateral Terms

1. Under Bankruptcy Rule 4001 and E.D.N.Y. LBR 4001-5, the following are the material provisions regarding Debtor's proposed use of Cash Collateral:

(a) **Parties with Interest in Cash Collateral** [Rule 4001(b)(1)(B)(I)]: the SBA, Grow America, and Pursuit (collectively, the "Secured Lenders") each holds a security interest in the accounts and other property of Debtor (the "Property"). Debtor uses the receipts from its accounts receivable to fund its operations.

(b) **Use of Cash Collateral** {Rule 4001(b)(1)(B)(ii)]: Debtor is authorized to use the Cash Collateral in accordance with, and subject to, the budget (the "Budget") in order to satisfy the post-petition costs and expenses of the continued operations of its business. The initial budget (the "Initial Budget"), commencing July 19, 2023 and covering the period through October 27, 2023, is being prepared and will be submitted as Exhibit "A" to the proposed Interim Order in a few days.

(c) **Adequate Protection for the Secured Lenders** [Rule 4001(b)(1)(B)(iv)]: As adequate protection for any diminution in the value of the Secured Lenders' interest in their collateral resulting from (a) Debtor's use of Cash Collateral; (b) use, sale or lease of the Property; or (c) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code (the aggregate amount of such diminution is referred to hereinafter as the "Adequate Protection

Lien"), the Secured Lenders shall receive the following adequate protection: (i) replacement liens

pursuant to Bankruptcy Code §361(2) ("Replacement Liens") on all property of Debtor and its

estate, whether now owned or hereafter acquired (collectively, the "Post-petition Collateral"); (ii)

to the extent required by the pre-petition loan documents (the "Loan Documents") to the same

extent and validity as its pre-petition liens; and (iii) adequate protection equal to the monthly

payments at the non-default contract rates that were being made to the Secured Lenders in the

months prior to the Petition Date, namely, $9,832 per month to the SBA; $6,276.38 per month to

Grow America; and $1,388.89 per month to Pursuit.

(d)     **Carve Out**: The Adequate Protection Liens shall be subject to the

following (collectively, the "Carve Out"): (i) the payment of allowed professional fees and

disbursements incurred by Debtor's professionals retained by an Order of the Bankruptcy Court,

or the Subchapter V Trustee, and in the event of a default that results in the termination of

Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements

(including any fees or expenses of the Subchapter V Trustee) incurred prior to delivery of a carve

out trigger notice (the "Carve Out Trigger Notice") in accordance with the Budget not to exceed

the sum of $75,000.00; (ii) any recoveries in favor of the estate pursuant to Chapter 5 of the

Bankruptcy Code; and (iii) any amounts allowed by the Court as fees and expenses of a trustee

appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00.

(e)     **Material Terms, Including Duration, of the Use of Cash Collateral**

[Rule 4001(b)(1)(B)(iii)]: Debtor's authorization to use Cash Collateral shall commence as of the

entry of the Interim Order and terminate upon the earliest of (i) the date that is ninety-one (91)

days after the Petition Date; (ii) entry of a Final Order or a further interim order authorizing

3

Debtor's use of Cash Collateral; or (iii) the occurrence of a Termination Event (as defined below). Date"). The Occurrence of the Termination Event shall terminate the rights of Debtor to use Cash Collateral hereunder, but shall not in any manner affect the rights of any secured party, or in any manner the validity, priority, enforceability or perfected status of any Replacement Liens.

(f)     **Termination Event**: The occurrence of any of the following events, shall constitute a Termination Event: (i) this Chapter 11 case shall have been dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or there shall have been appointed in the Chapter 11 case, a trustee (other than the Subchapter V Trustee) or examiner with expanded powers beyond the authority to investigate particular activities of Debtor; (ii) the Interim Order is for any reason not binding on Debtor, including by reason of it being modified, vacated, stayed, reversed; (iii) a default by Debtor in performing, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order, or in reporting financial information as and when required under the Interim Order, which continues uncured for a fifteen (15) day period after notice is given to Debtor of such default; or (iv) a variance, resulting from Debtor's expenditures that exceeds the amounts set forth in the Budget by fifteen percent (15%) or more, unless increase is caused by an increase in Debtor's business.

(g)     **Remedies**: Any Secured Lender may provide Debtor, other secured parties and the Office of the United States Trustee, with written notice of the occurrence of a Termination Event (the "Remedies Notice"). Upon the expiration of ten (10) business days after Debtor, and the U.S. Trustee's receipt of the Remedies Notice, if Debtor has failed to cure the alleged Termination Event, the secured party may move the Court on seven (7) days' notice for

4

an Order lifting the automatic stay provisions of section 362 of the Bankruptcy Code to the extent necessary to permit that secured party to exercise its rights and remedies against Debtor and its collateral, including, but not limited to, its right to set off against any existing Cash Collateral. Debtor's right to use the Cash Collateral shall terminate upon the expiration of the ten-day cure period if the default remains uncured.

(h)     **Determination of Validity, Enforceability and Amount of the Security Interests**: The Interim Order does not contain an acknowledgment by Debtor as to the validity, enforceability and amount of such obligation and security interest.

## Jurisdiction

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding as that term is defined within 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background

3.      On July 18, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

4.      Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee (other than the Subchapter V Trustee), examiner or committee has been appointed in this case.

5.      Debtor is a New York limited liability company with its corporate office located at 2-15 Borden Avenue, Long Island City, NY 11101. Debtor is a NY State Certified Level 2 Soundstage in Brooklyn and Long Island City, providing television, cinema, commercial, and editorial media clients with studio space and equipment for film and photography production.

5

6.      In May 2020, Debtor obtained a loan (the "SBA Loan") from the SBA for $2,000,000, and to secure repayment, Debtor granted the SBA a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on May 28, 2020.

7.      In May 2020, Debtor obtained a loan (the "Pursuit Loan") from Pursuit for $75,000, and to secure repayment, Debtor granted Pursuit a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on May 19, 2020.

8.      In March 2023, Debtor obtained a loan (the "Grow America Loan") from Grow America for $400,000 (part of which amount was used to pay off a pre-existing loan) and to secure repayment, Debtor granted Grow America a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on March 30, 2023.

9.      Each of the SBA Loan, the Pursuit Loan, and the Grow America Loan (collectively, the "Secured Loans") are outstanding, and Debtor is current on each of them.

10.     As of the Petition Date, Debtor was allegedly indebted to the Secured Lenders in the total amount of approximately $2,160,000. Debtor believes that the aggregate market value of the Colateral securing the Secured Loans is over $5,000,000. Debtor's primary source of funds for operations is the proceeds of its accounts receivable, which constitutes the Cash Collateral held by the Secured Lenders.

## Relief Requested

11.     By this Motion, Debtor requests the entry of an interim order, substantially in the

6

form annexed hereto, authorizing:

(a)     Debtor to use the Cash Collateral, in which the Secured Lenders have an interest, in accordance with the Budget;

(b)     the granting of adequate protection to the Secured Lenders with respect to the use of the Cash Collateral; and

(c)     the scheduling of a Final Hearing to be held no earlier than fourteen (14) days after the entry of the Interim Order to consider the entry of the Final Order. Debtor reserves its right to challenge any and all amounts owed to the Secured Lenders.

12.     Debtor submits that absent authorization to use Cash Collateral to allow this Debtor to continue its post-petition operation, Debtor, its estate, and its creditors shall suffer immediate and irreparable harm.

**<u>Basis for Relief</u>**

13.     Bankruptcy Code §363 governs a debtor's use of property of the estate. Bankruptcy Code §363(c)(1) provides that: If the business of a debtor is authorized to be operated under section 1108 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

14.     Bankruptcy Code §363(c)(2), however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course as set forth in Bankruptcy Code §363. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

(A) each entity that has an interest in such collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

15.     Accordingly, under Bankruptcy Code §363(c)(2), a debtor may not use cash collateral without the consent of the secured party, or, approval from the Court. Debtor submits that, under the circumstances here, including Debtor's need to use Cash Collateral and the adequate protection afforded to the Secured Lenders, Debtor's request to use Cash Collateral should be granted.

### Debtor's Need to Use Cash Collateral

16.     Debtor has significant and immediate cash needs to continue paying its ongoing obligations as a debtor in possession and propose a plan of reorganization and emerge from bankruptcy. Reorganization under Chapter 11 is critical to preserving Debtor's value as a going concern. The Budget that will be submitted, will show Debtor's anticipated receipts and expenses for the period from July 19, 2023 through October 27, 2023. As of the filing date, Debtor had approximately $250,000 on hand.

17.     Debtor's immediate need for the use of Cash Collateral is based upon Debtor's need to meet rent obligations, payroll obligations, insurance obligations, utility obligations (including deposits), and other operating expenses. By meeting these post-petition, administrative expenses, Debtor shall protect the assets of its creditors and preserve the value of its business as a going concern.

### Proposed Adequate Protection

18.     To the extent that the Secured Lenders' interest in the Cash Collateral constitutes

a valid and perfected security interest and lien as of the Petition Date, it is entitled, pursuant to

§§361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash

Collateral. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has

an interest in Cash Collateral used or proposed to be used by Debtor, the Court shall prohibit or

condition such use as is necessary to provide "adequate protection" of that interest.

19.    What constitutes "adequate protection" is a "fact-specific inquiry". *See, In re*

*Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The purpose of adequate protection is to

prevent the diminution in the value of the secured creditor's interest in their collateral during the

reorganization process. *See, In re WorldCom. Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004)

("The legislative history for section 361 of the Bankruptcy Code, which sets forth adequate

protection may be provided under section 363, makes clear that the purpose is to insure that the

secured creditor receives value for which the creditor bargained for prior to Debtor's

bankruptcy."): *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995)

(*citing United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365

(1988))

> ("[T]o determine whether an entity is entitled to adequate protection and the type
> and amount of adequate protection required, a court must determine the value of
> the collateral; the creditor's interest in the collateral and the extent to which that
> value will decrease during the course of the bankruptcy case"); *In re Beker Indus.
> Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus is on protection of the
> secured creditor from diminution in value of its collateral during reorganization
> process). However, "[a]dequate protection, not absolute protection, is the statutory
> standard." *In re Beker Indus.*, 58 B.R. at 736.

20.    Debtor proposes, subject to this Court's approval, to provide the Secured Lenders

with the following adequate protection:

(a)    Replacement Liens on the Post-petition Collateral to the same extent and validity as their pre-petition liens; provided, however, that the Post-petition Collateral shall not include any recoveries under Chapter 5 of the Bankruptcy Code and are further subject to the Carve Out described above;

(b)    Adequate protection payments to the Secured Lenders in monthly payments, which are payments at the non-default contract rate equal to the monthly payments that have been made to each of the Secured Lenders prior to the filing of this case, namely, $9,832 per month to the SBA; $6,276.38 per month to Grow America; and $1,388.89 per month to Pursuit. In addition, the Secured Lenders as over secured creditors are also adequately protected by the equity cushion in the Property;

(c)    Carve Out: The Adequate Protection Liens shall be subject to the following Carve Out: (i) the payment of allowed professional fees and disbursements incurred by Debtor's professionals retained by an Order of the Bankruptcy Court, or the Subchapter V Trustee, and in the event of a default that results in the termination of Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements (including any fees or expenses of the Subchapter V Trustee) incurred prior to delivery of a carve out trigger notice in accordance with the Budget not to exceed the sum of $75,000.00; (ii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code; and (iii) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00.

21.    Debtor shall undertake to keep the Collateral fully insured against all loss, peril and hazard and make the Secured Lenders the additional insureds in any such insurance policy

maintained by Debtor as to the Collateral. Debtor shall timely pay any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral as provided for under the Loan Documents. Debtor, at the request of the Secured Lenders, will provide proof of insurance, and will give proof of any reasonable requested changes within five (5) business days of written demand and will give the Secured Lenders reasonable access to its records in this regard.

22.     Debtor will provide the Secured Lenders, upon ten (10) business day's written notice, at any time during Debtor's normal business hours, the right to inspect, audit, examine, check, make copies of or extract from the books and records of Debtor, and monitor the Collateral, and Debtor will make all of the same reasonably available to the Secured Lenders and its representatives, for such purposes.

23.     Debtor will provide the Secured Lenders with the right to inspect the location and Debtor's books and records upon reasonable request and will further provide the Secured Lenders with all of Debtor's operating reports on a timely basis.

### The Budget

24.     Debtor will shortly prepare and submit an initial three-month Budget (which will be annexed to the proposed Interim Order). The Budget is been thoroughly reviewed by Debtor and its management and will set forth the periods covered thereby, among other things, Debtor's projected monthly disbursements for each month commencing with the month starting on the Petition Date.

### Notice

25.     Notice of the Motion shall be given to: (i) the Office of the United States Trustee;

(ii) Debtor's 20 largest unsecured creditors; (iii) the Secured Lenders;  (iv) other parties listed in Debtor's list of creditors submitted with its Petition; and (v) any party having filed a notice of appearance in the case.

### No Prior Request

26.     Debtor has not previously sought the relief sought herein before this Motion.

**WHEREFORE**, Debtor respectfully requests that this Court enter (i) the proposed Interim Order; (ii) an Order scheduling the Final Hearing; and (iii) such other, further and different relief that this Court deems just, proper and equitable under the facts and circumstances herein.


Dated: New York, New York
July 27, 2023

                                                       Lewis W. Siegel
                                                       Proposed Attorney for
                                                       Future Present Productions, LLC

                                                       /s/ Lewis W. Siegel
                                                       _____

                                                       60 East 42nd Street - Suite 4600
                                                       New York, NY 10165
                                                       (212) 286-0010

Lewis W. Siegel
60 East 42nd Street - Suite 4600
New York, NY 10165
(212) 286-0010

Proposed Attorney for
Future Present Productions, LLC,  Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                                     **Subchapter V**
                                                              **Chapter 11 Case**
**Future Present Productions, LLC**                           **No. 23-42510 (JMM)**
**DBA GUM Studios**
                            **Debtor.**
-------------------------------------------------------------x

**Affirmation of Carrie White in Support**
**Of Debtor's Motion to Use Cash Collateral**

Carrie White, hereby affirms the following under the penalties of perjury:

1.      I am the CEO of Future Present Productions, LLC, debtor and debtor in

possession in this Chapter 11 case ("Debtor"). I am familiar with Debtor's day-to-day operations,

business, and financial affairs.

2.      This affirmation is made in support of Debtor's Motion:1 (i) authorizing Debtor to

use the Cash Collateral of  the Small Business Administration (the "SBA"), Grow America Fund,

Inc. ("Grow America"), and Pursuit Lending ("Pursuit") (such parties, collectively, the "Secured

Lenders"); and (ii) scheduling a Final Hearing to consider the entry of a Final Order.

3.      Debtor is a New York limited liability company with its corporate office located

at 2-15 Borden Avenue, Long Island City, NY 11101. Debtor is a NY State Certified Level 2

Soundstage in Brooklyn and Long Island City, providing television, cinema, commercial, and

1

editorial media clients with studio space and equipment for film and photography production.

4.      In May 2020, Debtor obtained a loan (the "SBA Loan") from the SBA for $2,000,000, and to secure repayment, Debtor granted the SBA a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on May 28, 2020.

5.      In May 2020, Debtor obtained a loan (the "Pursuit Loan") from Pursuit for $75,000, and to secure repayment, Debtor granted Pursuit a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on May 19, 2020.

6.      In March 2023, Debtor obtained a loan (the "Grow America Loan") from Grow America for $400,000, a portion of which was used to payoff an earlier loan, and to secure repayment, Debtor granted Grow America a security interest in basically all of its assets, including, its Accounts Receivable and their proceeds. A UCC-1 was filed on March 30, 2023.

7.      Each of the SBA Loan, the Pursuit Loan, and the Grow America Loan (collectively, the "Secured Loans") are outstanding, and Debtor is current on each of them.

8.      As of the Petition Date, Debtor was allegedly indebted to the Secured Lenders in the total amount of approximately $2,160,000. Debtor believes that the aggregate market value of the Collateral securing the Secured Loans is over $5,000,000. Debtor's primary source of funds for operations is the proceeds of its accounts receivable, which constitutes the Cash Collateral held by the Secured Lenders.

9.      Debtor is finalizing a Budget for Debtor from July 19, 2023 through October 27, 2023. This initial Budget will have been thoroughly reviewed by the undersigned, Debtor and its

management, and set forth the periods covered thereby, among other things, Debtor's projected monthly disbursements for the periods designated, as well as anticipated income and payment of related expenses.

10.     Debtor's immediate need for the use of cash collateral is based upon Debtor's need to meet rent obligations, payroll obligations, insurance obligations, utility obligations (including deposits), and other operating expenses. By meeting these post-petition, administrative expenses, Debtor shall protect the assets of its creditors and preserve the value of its business as a going concern.

11.     Debtor submits that the Secured Lenders are adequately protected and that the Interim Order permitting the use of Cash Collateral be granted in this case, together with such other and further relief as this Court deems just and proper.

Dated: July 27, 2023

/s/ Carrie White
_____
Carrie White

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                    Subchapter V
                                                         Chapter 11 Case
Future Present Productions, LLC                          No. 23-42510 (JMM)
DBA GUM Studios
                    Debtor.
------------------------------------------------------------x

**Interim Order under 11 U.S.C. §§ 105, 361 and 363 and Fed. R. Bankr. P. 4001**
**Authorizing Debtor to Use Cash Collateral,**
**Granting Adequate Protection to the Lenders and**
**Scheduling a Final Hearing under Bankruptcy Rule 4001(b)**

Upon consideration of the motion (the "Motion") of Future Present Productions, LLC,

debtor and debtor in possession ("Debtor"), seeking the entry of an interim order (the "Interim

Order") pursuant to sections 105, 361 and 363 of Title 11 of the United States Code, (the

"Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and E.D.N.Y. LBR 4001-5: (i) authorizing Debtor to use the cash collateral (the "Cash

Collateral") of the Small Business Administration (the "SBA"), Grow America Fund, Inc.

("Grow America"), and Pursuit Lending ("Pursuit") (such parties, collectively, the "Secured

Lenders" or the "Secured Parties"), pre-petition secured lenders; and (ii) scheduling a final

hearing (the "Final Hearing") on the Motion; and the Court having jurisdiction of this Chapter 11

case and to consider the Motion and the relief requested herein pursuant to 28 U.S.C. § 1334 and

the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the

Eastern District of New York, dated July 19, 1984; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and consideration of

the affirmation of Carrie White, CEO of Debtor in support of the Motion filed concurrently with

1

the Motion; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given as set forth in the Motion; and no other or further notice being required under the circumstances, and the relief requested in the Motion being in the best interests of Debtor, its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court held on _____ ___, 2023 (the "Interim Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Interim Hearing established just cause for the interim relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor; and after overruling objections to the Motion, if any:

**IT IS HEREBY FOUND that:**

(1)     On July 18, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in this Court. Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee (other than the Subchapter V Trustee) or examiner and no official committee has yet been appointed in this Chapter 11 case.

(2)     This Court has jurisdiction over this Chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought are sections 105, 361 and 363 of the Bankruptcy Code, Rule 4001(b) of the Bankruptcy Rules and E.D.N.Y. LBR 4001-5. Venue of the Chapter 11 case and this Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

(3)     Good cause has been shown for the entry of this Interim Order. As set forth in the Motion, Debtor has significant and immediate need for the use of Cash Collateral to satisfy its post-petition operating expenses, including, but not limited to, the payment of rent, wages, utility bills (including utility deposits), and to make adequate protection payments. Absent the immediate use of the Cash Collateral, Debtor and its estate will suffer immediate and irreparable harm and will not be able to emerge successfully from Chapter 11.

(4)     The relief requested in the Motion is necessary, essential, and appropriate in order that Debtor may continue paying its obligations and preserve the assets of the estate as a going concern.

(5)     Based upon the Motion, the budget (the "Budget") a copy of which is annexed to this Interim Order as Exhibit "A", and the record presented to the Court at the Interim Hearing, the terms of Debtor's use of the Cash Collateral are fair and reasonable and reflect Debtor's and its CEO's exercise of prudent business judgment consistent with their fiduciary duties.

(6)     The Secured Lenders have liens on the Cash Collateral and are entitled to adequate protection. As a result of the entry of this Interim Order, the Secured Lenders' interest in the Cash Collateral shall be adequately protected.

(7)     Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The use of the Cash Collateral as set forth in the accompanying Budget is necessary to avoid immediate and irreparable harm to Debtor. The Court concludes that entry of this Interim Order is in the best interests of Debtor, its estate and creditors.

(8)     Notice of the Motion has been given to: (i) the Office of the United States

Trustee; (ii) the Secured Lenders or their counsel; (iii) Debtor's 20 largest unsecured creditors; (iv) other parties listed in Debtor's list of creditors submitted with its Petition; and (v) any party having filed a notice of appearance and demand for service in this Chapter 11 case.

**IT IS HEREBY ORDERED:**

1.    The Application. The Motion is granted on an interim basis to the extent set forth herein. All objections to the Motion, to the extent not withdrawn, are hereby overruled.

2.    Cash Collateral. For purposes of this Interim Order, "Cash Collateral" shall consist of all cash collateral (as defined in section 363(a) of the Bankruptcy Code) of the Secured Lenders including the amounts realized by Debtor from the sale, lease or other disposition or conversion of the Secured Lenders collateral pledged by Debtor to secure its obligations to those parties.

3.    Authorization. Subject to the terms and conditions herein, Debtor is authorized to use the Cash Collateral, for the interim period commencing from the date of the entry of this Interim Order through October 27, 2023, in accordance with the Budget. Debtor may expend up to an additional 15% over the amount set forth in the Budget, provided, however, it may expend additional amounts if their use is required by business in excess of that projected in the Budget. The use of the Cash Collateral by Debtor shall give rise to an obligation by Debtor for the repayment of the Cash Collateral used.

4.    Term. Debtor's authorization to use the Cash Collateral shall commence as of entry of this Interim Order by the Court and terminate upon the earliest of: (i) the date that is one hundred and five (105) days after the Petition Date; (ii) entry of a Final Order or a further interim order granting Debtor's authorization to use the Cash Collateral; or (iii) the occurrence of a

4

Termination Event (as defined below). Occurrence of the Termination Event shall terminate  the

rights of Debtor to use the Cash Collateral hereunder, but shall not in any manner affect the

rights, privileges or other protections afforded by any of the Secured Lenders, or in any manner

affect the validity, priority, enforceability or perfected status of a lien or security interest granted

for the benefit of any of the Secured Lenders pursuant hereto.

5.      Adequate Protection for the Secured Lenders. As adequate protection for any

diminution in the value of the Secured Lenders' interest in the collateral resulting from (a)

Debtor's use of Cash Collateral; (b) use, sale or lease of the Secured Lenders' collateral; or (c)

the imposition of the automatic stay under Bankruptcy Code §362(a) (the aggregate amount of

such diminution is referred to hereinafter as the "Adequate Protection Lien"), the Secured

Lenders shall receive the following adequate protection: (i) replacement liens pursuant to section

361(2) of the Bankruptcy Code (the "Replacement Liens") on all property of Debtor and its

estate, whether now owned or hereafter acquired (collectively, the "Post-petition Collateral"); (ii)

to the extent required by the pre-petition loan documents (the "Loan Documents") to the same

extent and validity as its pre-petition liens. Commencing on September 1, 2023, Debtor shall

make monthly adequate protection payments, which are payments at the non-default contract rate

to the Secured Lenders in accordance with the pre-petition Loan Documents as have been paid by

Debtor during the months prior to the Petition, namely, $9,832 per month to the SBA; $6,276.38

per month to Grow America; and $1,388.89 per month to Pursuit. Within five business days after

the entry of this Interim Order, Debtor shall make an additional adequate protection payment to

the Secured Lenders to cover the payment that would have been made on or about August 1,

2023.

6.      Carve Out: The Adequate Protection Liens shall be subject to the following (collectively, the "Carve Out"): (I) the payment of allowed professional fees and disbursements incurred by Debtor's professionals retained by an Order of the Bankruptcy Court, or the Subchapter V Trustee, and in the event of a default that results in the termination of Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements (including any fees or expenses of the Subchapter V Trustee) incurred prior to delivery of a carve out trigger notice in accordance with the Budget not to exceed the sum of $75,000.00; (ii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code; and (iii) any amounts allowed by the Court as fees and expenses of a trustee appointed under §726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00.

7.      The Replacement Liens granted to each of the Secured Lenders shall become valid, enforceable and fully perfected liens without any action by Debtor or the Secured Party, and no filing or recordation or other act that otherwise may be required under federal or state law in any jurisdiction shall be necessary to create or perfect such liens and security interests. If a Secured Lender hereafter reasonably requests that Debtor execute and deliver to it financing statements, security agreements or other instruments or documents considered to be necessary or desirable to further evidence perfection of the liens and security interests granted herein, Debtor is hereby authorized to execute and deliver such documents.

8.      The Replacement Liens granted by this Interim Order shall survive the entry of any order: (i) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (ii) dismissing this Chapter 11 case; (iii) appointing a Chapter 11 trustee or examiner with expanded powers; and the Replacement Liens granted pursuant to this Interim Order shall

6

continue in full force and effect notwithstanding the entry of such an order, and such

Replacement Liens shall maintain any priority granted in this Interim Order.

9.      The Interim Order shall be without prejudice to any party to seek any further

application for other or further adequate protection or relief or modification of the automatic stay

or any other rights, claims or privileges of any type.

10.     Term and Restrictions. Debtor's authorization to use the Cash Collateral shall be

subject to the following terms and restrictions:

(a)      From the entry of this Interim Order and continuing until a Termination

Event, the Secured Lenders shall be entitled, upon ten (10) business day's written notice, at any

time during Debtor's normal business hours, the right to inspect, audit, examine, check, make

copies of or extract from the books and records of Debtor, and monitor the Collateral, and Debtor

shall make all of the same reasonably available to the Secured Lenders and their representatives,

for such purposes.

(b)      Debtor shall undertake to keep the Collateral fully insured against all loss,

peril and hazard and make the Secured Lenders the additional insureds in any such insurance

policy maintained by Debtor as to the Collateral. Debtor shall timely pay any and all undisputed

post-petition taxes, assessments and governmental charges with respect to the Collateral as

provided for under the Loan Documents. Debtor, at the request of the Secured Lenders, shall

provide proof of insurance, and will give proof of any reasonable requested changes within five

(5) business days of written demand and will give the Secured Lenders reasonable access to its

records in this regard.

11.     Termination Events. Each of the following shall constitute a "Termination Event"

with respect to the authorization of Debtor to use the Cash Collateral, unless waived by a Secured Party.

(a)     The Chapter 11 case has been dismissed or converted to a Chapter 7 case under the Bankruptcy Code, or there shall have been appointed in the Chapter 11 case, a trustee or an examiner (other than the Subchapter V Trustee) with expanded powers beyond the authority to investigate particular activities of Debtor.

(b)     Debtor files a motion seeking to modify, vacate, stay, supplement or amend the terms of this Interim Order without the prior written consent of the affected Secured Party.

(c)     This Interim Order is modified, vacated, stayed, supplemented, reversed, or is for any reason not binding on Debtor, without the prior written consent of the affected Secured Party.

(d)     Debtor fails to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligation under this Interim Order.

(e)     Debtor expends more than 110% of the Budget, unless caused by an increase in business by Debtor.

(f)     There is at any time a material inaccuracy in any financial report or certification provided by Debtor to the Secured Lenders.

12.     Remedies. A Secured Party may provide Debtor and the Office of the United States Trustee, with written notice of the occurrence of a Termination Event (the "Remedies Notice"). Upon the expiration of ten (10) business days after Debtor, the Subchapter V Trustee, and the U.S. Trustee's receipt of the Remedies Notice, and Debtor has failed to cure the alleged

Termination Event, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed vacated and modified to the extent necessary to permit that Secured Party to exercise its rights and remedies against Debtor and its collateral, including, but not limited to, its right to setoff against any existing Cash Collateral. Debtor's right to use the Cash Collateral shall terminate upon the expiration of the ten-day cure period.

13.    Preservation of Rights. This Interim Order does not contain an acknowledgment by Debtor as to the validity, enforceability and amount of any secured obligation and security interest. Debtor expressly reserves its rights in that regard.

14.    Binding Effect. The provisions of this Interim Order shall be binding and inure to the benefit of the Secured Lenders, Debtor and its estate, and any trustee that may be subsequently appointed in this Chapter 11 case or in any superseding Chapter 7 case. If any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court, no such modification, amended or vacatur shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby.

15.    No Third-Party Beneficiaries. The Secured Lenders shall not be liable to any third parties (including any and all creditors of the estate or Debtor who may have administrative claims within the Budget) and no such third parties are intended to or shall be deemed to be beneficiaries of the provisions of this Interim Order.

16.    Modification of the Automatic Stay. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation to: (i) permit Debtor to grant the Adequate Protection Liens; (ii) permit Debtor to perform such acts as the Secured Lenders may reasonably

9

request to assure the perfection of the liens granted herein; (iii) permit Debtor to incur all liabilities and obligations to the Secured Lenders under this Interim Order; and (iv) permit the Secured Lenders to exercise its rights and remedies as provided for herein.

17.     Binding Effect of Interim Order. This Interim Order shall constitute findings of fact and conclusions of law immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary, including Bankruptcy Rule 6004(h), 7062, or 9014 or Rule 62(a) of the Federal Rules of Civil Procedure), the terms and provisions of this Interim Order shall be effective as of the Petition Date, become valid and binding upon and inure to the benefit of Debtor, the Secured Lenders, and any committee that may be appointed in this Chapter 11 case, and all other parties in interest, including any trustee or other fiduciary hereafter appointed in this Chapter 11 case, any successor Chapter 11 case, or upon dismissal of the Chapter 11 case. In the event of any inconsistency between these provisions of this Interim Order and any other "first day" order or any loan or other agreement, the provisions of this Interim Order shall govern and control.

18.     The Final Hearing to consider the entry of a final order on the Motion shall be held on _____ ___, 2023 at __:__ a.m./p.m., before the Honorable Jil Mazer-Marino.

19.     The Final Hearing shall not be held in person but shall be held by videoconference using the Zoom platform.

20.     Debtor shall serve a copy of this Order, via first class mail, upon (i) the Secured Lenders or their counsel; (ii) the Office of the United States Trustee; (iii) Debtor's 20 largest unsecured creditors; (iv)  other parties listed in Debtor's list of creditors submitted with its Petition, and (v) any party having filed a notice of appearance in this Chapter 11 case and a

10

demand for service, on or before _____ __, 2023.

21.    Debtor shall file an affidavit of service attesting to service of this Interim Order by no later than _____ __, 2023.

22.    Objections, if any, to the relief sought in the Final Order, must be in writing, conform with the Bankruptcy Code, the Bankruptcy Rules and the E.D.N.Y. Local Bankruptcy Rules, state with particularity the grounds therefor and be filed with the Bankruptcy Court no later than _____ __, 2023 as follows: (i) through the Court's CM/ECF system, which may be accessed through the internet at the Court's website at https://www.nyeb.uscourts.gov/ and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.