**Bronster LLP**
Attorneys for Grow America Fund, Inc.
156 W. 56th Street, Suite 703
New York, New York 10019
(212) 558-9300
J. Logan Rappaport, Esq.
lrappaport@bronsterllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re                                                              Case No. 23-42510-jmm

      FUTURE PRESENT PRODUCTIONS, LLC,          Hon. Jil Mazer-Marino
      d/b/a GUM STUDIOS,

          Debtor.

----------------------------------------------------------------X

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF GROW AMERICA FUND, INC. TO THE MOTION OF DEBTOR SEEKING THE ENTRY OF AN ORDER GRANTING AUTHORIZATION TO USE CASH COLLATERAL AND RELATED RELIEF**

Grow America Fund, LLC ("GAF"), a secured creditor of Future Present Productions, LLC d/b/a Gum Studios ("Debtor"), the debtor and debtor-in-possession in the above captioned case, by and through undersigned counsel, as and for its limited objection and reservation of rights (the "Objection") to Debtor's motion (the "Motion"), dated July 27, 2023, seeking the entry of an interim order, pursuant to 11 U.S.C. §§ 105, 361, and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing Debtor to use cash collateral, granting adequate protection to certain pre-petition lenders, including GAF, and scheduling a final hearing on the use of cash collateral, respectively represents as follows:

**JURISDICTION AND VENUE**

    1.      Jurisdiction of this matter rests with this Court pursuant to 28 U.S.C. §§ 157 and

1334 and the Standing Order of Reference to the Bankruptcy Court under Title 11 from the

United States District Court for the Eastern District of New York. This is a core proceeding

pursuant to 28 U.S.C. § 157(b). Venue is appropriate in this forum pursuant to 28 U.S.C. §§ 1408

and 1409.

## FACTUAL BACKGROUND

2.      Pursuant to the Loan and Security Agreement (the "Agreement"), dated October

24, 2019, GAF loaned Debtor the sum of $400,000.00 (the "Loan"). In order to secure the

repayment of the Loan, Debtor granted GAF a blanket security interest in the assets then owned

by Debtor or thereafter acquired, including, but not limited, to cash, deposit accounts, financial

accounts, inventory, accounts receivable, equipment, fixtures, chattel paper, and general

intangibles (collectively, the "Collateral").

3.      Contemporaneously with the execution of the Agreement, Debtor executed and

delivered to GAF a promissory note (the "Note") evidencing Debtor's obligation to pay GAF the

sum of $400,000.00 together with interest at a variable rate of the Prime Rate as reported by the

Wall Street Journal plus 1.25% with the initial rate being 6.25%.

4.      GAF's security interest in the Collateral was thereafter perfected upon the filing

of an appropriate UCC-1 with the State of New York, Secretary of State.

5.      On July 18, 2023 (the "Filing Date"), Debtor filed a voluntary petition for relief

from its creditors pursuant to Subchapter V of Chapter 11 of title 11 of the United States Code,

11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

6.      Debtor continues in operation of its business and managing its assets as a debtor

in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the Filing Date, the balance due GAF with respect to the Loan was the sum

of $206,953.13, inclusive of interest through the Filing Date.

8.      As of the Filing Date, the interest rate on the Loan was 9.50%. As such, the monthly payments due under the Loan increased to $6,301.02.

## The Limited Objection

9.      Pursuant to the Motion, Debtor seeks authorization, pursuant to 11 U.S.C. §§ 105, 361, and 363 and Bankruptcy Rule 4001, to use the cash collateral (as that term is defined in the Section 363(a) of the Bankruptcy Code) of GAF, as well as two other secured creditors, Small Business Administration ("SBA"), and Pursuit Lending ("Pursuit", and together with GAF and SBA, the "Secured Creditors"). As a condition to its use of the Secured Creditors' cash collateral, Debtor proposes to provide adequate protection to such parties in the form of replacement liens and monthly adequate protection payments.

10.     Pursuant to Section 363(c)(2), a debtor-in-possession may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, authorizes such use, sale, or lease. Furthermore, Section 363(e) provides that the court shall prohibit or condition such use, sale, or lease of cash collateral as necessary to provide adequate protection of a party's interest therein.

11.     With respect to the monthly adequate protection payments, Debtor proposes to make such payments "at the non-default contract rates that were being made to the Secured [Creditors] in the months prior to the Petition Date . . . $6,276.38 per month to Grow America . . ." *Motion*, p. 3. While GAF appreciates Debtor's willingness to make adequate protection payments at the non-default contract rate, Debtor mistakenly references the old payment amount rather than the amount in effect as of the Filing Date. As the Loan carries a variable rate pegged to the Prime Rate (plus 1.25%), the interest rate had changed on July 1, 2023 with the new rate

3

being 9.5%. As such, the non-default contract rate as of the Filing Date was the sum of

$6,301.02. According to Debtor's proposed budget, Debtor has the ability to make the full

payment due and, as such, GAF respectfully requests that the interim order authorizing Debtor's

use of GAF's cash collateral provide for monthly payments beginning August 1, 2023 in the sum

of $6,301.02.

12.      GAF's second objection concerns the substantial carve-out from the replacement

liens that Debtor proposes for "the payment of allowed professional fees and disbursements

incurred by Debtor's professionals retained by an Order of the Bankruptcy Court, or the

Subchapter V Trustee, and in the event of a default that results in the termination of Debtor's

authorization to use cash collateral, unpaid Professional Fees and Disbursements (including any

fees or expenses of the Subchapter V Trustee) incurred prior to the delivery of a carve out trigger

notice (the "Carve Out Trigger Notice") in accordance with the Budget not to exceed the sum of

$75,000.00." *Motion*, p. 3.

13.      GAF does not object to a reasonable carve-out for the Subchapter V Trustee's

fees and expenses or the proposed carve-out with respect to a potential Chapter 7 Trustee and

Chapter 5 recoveries. GAF only objects to a carve-out for Debtor's professionals as the Secured

Creditors should not in effect ensure the payment of Debtor's fees and expenses.

14.      "While there is no reference in the Bankruptcy Code to "carve outs" for

professionals, out of practical necessity, the term is commonly included in cash collateral/DIP

financing agreements." *In re California Webbing Industries, Inc.*, 370 B.R. 480, 483 (Bankr. D.

R.I. 2007). It generally refers to an ***agreement*** between secured lenders and the debtor-in-

possession or trustee that a portion of the secured creditor's collateral may be used to satisfy

administrative expenses. *Id.* Absent an agreement by the secured creditor, its "collateral may

4

only be charged for administrative expenses, including attorney's fees, to the extent these

expenses directly benefited that secured creditor." *In re Blackwood Associates, L.P.*, 153 F.3d

61, 68 (2d Cir. 1998). As the secured creditor's consent is necessary in order for a cash collateral

carve out to be approved, the Motion cannot be granted in full. Rather, the order approving the

use of cash collateral should not include a carve out for Debtor's professional fees and expenses

from GAF's cash collateral.

15.     GAF reserves its right to amend or supplement this Objection in the event

additional information becomes available prior to any hearing on this Objection or a final hearing

on the Motion.

**WHEREFORE**, GAF respectfully requests the Court enter an Order: (i) denying the

Motion; (ii) alternatively, directing Debtor to make monthly adequate protection payments to

GAF in the sum of $6,301.02 as a condition to its use of GAF's cash collateral and denying a

carve-out from the replacement lien provided to GAF for Debtor's professional fees and

expenses; and (iii) such other and further relief that the Court deems just and proper.

Dated: New York, New York                           BRONSTER LLP
     August 1, 2023                               Attorneys for Grow America Fund, Inc.

                            By:     *s//J. Logan Rappaport*
                                  J. Logan Rappaport
                                156 W. 56th Street, Suite 703
                                New York, NY 10019
                                (212) 558-9300
                                lrappaport@bronsterllp.com